Argued and submitted September 25, 1990, reversed and remanded February 6, reconsideration denied May 1, petition for review denied May 28, 1991 (311 Or 427)

# STATE OF OREGON,
*Appellant,*

*v.*

# SHANNON LOUANN GALE,
*Respondent.*

(10-88-09736; CA A62296 (Control))

# STATE OF OREGON,
*Appellant,*

*v.*

# MYLES FRANKLIN ROWDEN,
*Respondent.*

(10-88-09742; CA A62302)
(Cases Consolidated)

805 P2d 158

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for appellants. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

In these consolidated criminal cases,[1] the trial court granted defendants' motions to suppress evidence on the ground that the facts alleged in the affidavit supporting the search warrant were too stale to establish probable cause. We reverse.

The warrant, issued on November 2, 1988, was based on an affidavit by Officer Shadwick, in which he related information received by police from 1986 to 1988. The issue is whether the affidavit contained information sufficiently linking defendant Rowden to an ongoing methamphetamine manufacturing and distributing enterprise to enable a magistrate to determine that probable cause existed to search defendants' property.

The affidavit, also dated November 2, 1988, states that, in October, 1988, the police had received information that equipment from a possible methamphetamine laboratory had been discovered. The affidavit reads:

"I AM CURRENTLY ASSIGNED AS AN INVESTIGATOR IN THE VICE AND NARCOTICS UNIT OF THE EUGENE POLICE DEPARTMENT AND HAVE RECENTLY BEEN ASSIGNED TO INVESTIGATE A CASE INVOLVING A METHAMPHETAMINE LAB THAT WAS FOUND AT EGGE SAND AND GRAVEL LOCATED AT 90520 COBURG ROAD, EUGENE, LANE COUNTY OREGON.

"THAT WITHIN THE LAST TWO WEEKS WE RECEIVED A PHONE CALL * * * THAT A COUPLE BY THE NAME OF BARBARA AND DENNIS SMITH HAD FOUND WHAT [WAS] THOUGHT TO BE A METHAMPHETAMINE LAB. * * *

"THAT I CONTACTED DENNIS SMITH AND HIS WIFE BARBARA YOUNG-SMITH, WHO LIVE NEXT DOOR TO EGGE SAND AND GRAVEL. * * * DENNIS SMITH TOLD ME THAT SOMETIME DURING THE WEEKEND OF OCTOBER 6TH THROUGH OCTOBER 8, 1988, HE AND BARBARA WERE WALKING WITH THEIR DOGS BEHIND THE GRAVEL LOT WHEN THEY OBSERVED A BLUE TARP THAT WAS COVERING

---

[1] Defendants shared the residence that was searched under the search warrant.

SOMETHING BENEATH A GROUP OF TREES. DENNIS SMITH TOLD ME THAT HE PICKED UP A CORNER OF THE TARP AND OBSERVED EIGHT TO TEN LARGE PLASTIC GARBAGE BAGS THAT WERE TIED AROUND THE TOP. DENNIS SMITH SAID THAT 'SOMETHING WASN'T RIGHT", AND HE OPENED UP ONE OF THE GARBAGE BAGS TO INVESTIGATE. SMITH SAID THAT HE COULD SEE A LARGE PLASTIC FUNNEL INSIDE OF THE BAG.

"SMITH SAID THERE WAS A SUBJECT WITH THE FIRST NAME OF MYLES WHO LIVED IN A TRAILER APPROXIMATELY 400 YARDS WEST OF WHERE THE LAB EQUIPMENT WAS FOUND. SMITH TOLD ME THAT TO THE BEST OF HIS KNOWLEDGE, THERE WERE NO OTHER RESIDENCES, OR OTHER PEOPLE LIVING ON THE PROPERTY. SMITH SAID THAT HE WASN'T SURE WHAT TO DO WITH THE INFORMATION, AND THAT HE DECIDED TO CONTACT HIS FRIEND JOE DAVIS, AND VERNON EGGE TO TELL THEM WHAT HE FOUND.

"* * * * *

"THAT ON THE WEEKEND OF OCTOBER 22 AND 23, SMITH AGAIN CONTACTED VERNON EGGE TO FIND OUT WHAT HAD HAPPENED WITH THE BAGS AND TARP, AS THE DAY AFTER TALKING WITH VERNON EGGE, HE HAD NOTICED THAT THEY WERE MISSING. EGGE TOLD SMITH THAT HE HAD GONE AND OPENED ONE OF THE BAGS AND 'THE STINK JUST ABOUT KNOCKED ME ON MY BUTT'. EGGE ALSO TOLD SMITH NOT TO WORRY, AS HE (EGGE) HAD CONTACTED THE OREGON STATE POLICE, WHO HAD RESPONDED AND TOOK THE BAGS AWAY. EGGE SAID THAT THE BAGS CONTAINED SOME SORT OF 'METH' EQUIPMENT. SMITH SAID THAT EGGE WAS THE FIRST PERSON TO BRING UP THE WORD 'METH,' IN REGARD TO THE ITEMS THAT HE FOUND.

"THAT BASED UPON MY TRAINING AND EXPERIENCE, I KNOW THAT INDIVIDUALS THAT ARE ASSOCIATED WITH PERSONS INVOLVED IN THE ILLEGAL DRUG TRADE ARE OFTEN TIMES NOT ACTIVELY PARTICIPATING IN THE ACTUAL ILLEGAL PROCESS OF MANUFACTURING THE CONTROLLED SUBSTANCES. THESE PEOPLE CAN BE INVOLVED IN A VARIETY OF DIFFERENT WAYS,

NOT LIMITED TO, BUT INCLUDING, SUPPLYING A LOCATION FOR THE MANUFACTURING PROCESS, FINANCIAL BACKING AND MONEY LAUNDERING."

According to the affidavit, Shadwick contacted the Oregon State Police Department, the Coburg Police Department and the Lane County Sheriff's Department. None of the departments had received any report of a methamphetamine laboratory found in the area or had responded to seize such a laboratory. Shadwick also ran a records check on Myles Franklin Rowden, which listed his address as 90518 Coburg Road, Eugene, and showed that he had claimed that address since July, 1983. Egge Sand and Gravel's address is 90520 Coburg Road. Shadwick also checked tax records and found that 90518 Coburg Road was owned by Neil O. Egge.

While investigating the discovery and disappearance of the methamphetamine equipment, Shadwick learned that, in 1986, the police had received information from a reliable informer that Rowden was part of a methamphetamine manufacturing enterprise. Regarding that information, the affidavit says:

"SGT. SIEL TOLD ME THAT HE ALSO HAD INFORMATION THAT THERE HAD BEEN A METHAMPHETAMINE LAB ON THE EGGE SAND AND GRAVEL PROPERTY.

"SGT. SIEL SAID THAT ON 080886, HE MADE CONTACT WITH ROBERT D. MASSENGILL, WHO WAS SUPPLYING INFORMATION TO SGT. SIEL ON INDIVIDUALS INVOLVED IN THE BUSINESS OF MANUFACTURING AND DISTRIBUTING METHAMPHETAMINE. MASSENGILL HAD PROVIDED SGT. SIEL WITH ACCURATE INFORMATION THAT HAD BEEN USED FOR OBTAINING AT LEAST FIVE SEARCH WARRANTS THAT PROVED TO BE SUCCESSFUL IN THE SEIZURE OF CONTROLLED SUBSTANCES. * * *

"THAT STARTING ON 080886 MASSENGILL BEGAN TO PROVIDE INFORMATION TO SGT. SIEL CONCERNING A NUMBER OF SUBJECTS INVOLVED IN THE ILLEGAL MANUFACTURING AND DISTRIBUTION OF CONTROLLED SUBSTANCES. AMONG THOSE INDIVIDUALS MENTIONED, WAS A CRIMINAL ENTERPRISE CONSISTING OF VERN ROBERT GRIFFIN, JANET LEE MORNEAU, AND MILES

FRANKLIN ROWDEN. MASSENGILL TOLD SGT. SIEL THAT GRIFFIN HAD TWO METHAMPHETAMINE LABS, ONE OF WHICH WAS ON THE EGGE SAND AND GRAVEL PROPERTY, IN THE RESIDENCE OF MYLES ROWDEN. FURTHER, THAT MASSENGILL HAD BEEN HIRED BY GRIFFIN TO TRAVEL OUT OF TOWN AND HAD PURCHASED CHEMICALS USED FOR THE PRODUCTION OF METHAMPHETAMINE, FOR THE GRIFFIN AND ROWDEN CRIMINAL ENTERPRISE.

"THAT MASSENGILL TOLD SGT. SIEL THAT SEVERAL DAYS PRIOR TO 083086, HE WENT TO ROWDEN'S TRAILER, WHICH IS LOCATED AT THE EGGE SAND AND GRAVEL LOT, AND THAT HE SMELLED A STRONG ODOR OF METHAMPHETAMINE COMING FROM THE TRAILER. MASSENGILL ALSO SAID THAT HE HAD OBSERVED A LARGE TRUNK BEHIND THE TRAILER THAT ALSO SMELLED LIKE METHAMPHETAMINE. WHEN ASKED TO DESCRIBE THE SMELL, MASSENGILL SAID 'YOU KNOW, CAT PISS'.

"* * * * *

"THAT ON 083086, AT SGT. SIEL'S REQUEST, MASSENGILL MET WITH ROWDEN REGARDING THE ACQUISITION OF PRECURSOR CHEMICALS TO BE USED FOR THE PRODUCTION OF METHAMPHETAMINE. ROWDEN HAD TOLD MASSENGILL THAT THEY HAD BEEN USING CARLOS MORENO TO 'MULE' PRECURSOR CHEMICALS OUT OF PORTLAND AND BROOKINGS, OREGON WHILE MASSENGILL WAS OUT OF CONTACT. * * * ROWDEN WENT ON TO SAY THAT MASSENGILL COULD COME TO THE METHAMPHETAMINE LAB WHEN HE WAS COOKING, AND THAT HE WAS GOING TO START ANOTHER 'COOK' IN THE NEXT FEW DAYS AT THE EGGE PROPERTY.

"THAT DURING THE SUMMER OF 1986, MASSENGILL TOLD SGT. SIEL THAT HE WAS APPROACHED BY VERN GRIFFIN AND MYLES ROWDEN AT THE EMBERS TAVERN IN EUGENE, LANE COUNTY OREGON. AT THAT TIME THE SUBJECTS ATTEMPTED TO SELL ONE OUNCE OF METHAMPHETAMINE TO MASSENGILL. DURING THIS SAME TIME PERIOD, MYLES ROWDEN WAS OBSERVED, THROUGH SURVEILLANCE, TO VISIT VERN GRIFFINS [sic] HOUSE AT 967 VIRGIL, EUGENE,

LANE COUNTY OREGON ON SEVERAL OCCASIONS. AT THE TIME, 967 VIRGIL WAS THE PRIMARY DISTRIBUTION AND 'SAFE' HOUSE FOR THE VERN GRIFFIN ENTERPRISE.

"THAT PRIOR TO 110486, MASSENGILL TOLD SGT. SIEL THAT HE HAD OBSERVED 16 OUNCES OF METHAMPHETAMINE INSIDE OF A SAFE LOCATED AT 967 VIRGIL STREET, EUGENE, LANE COUNTY OREGON.

"* * * * *

"THAT I KNOW THROUGH LOCAL POLICE RECORDS THAT VERN GRIFFIN HAS BEEN ARRESTED ON NUMEROUS OCCASIONS FOR POSSESSION OF A CONTROLLED SUBSTANCE, METHAMPHETAMINE. I AM ALSO AWARE THAT GRIFFIN WAS RECENTLY ARRESTED IN VANCOUVER WASHINGTON FOR POSSESSION OF METHAMPHETAMINE. * * *

"I ALSO KNOW THROUGH POLICE RECORDS THAT JANET MORNEAU HAS BEEN ARRESTED FOR POSSESSION OF METHAMPHETAMINE, AS WELL AS BEING ARRESTED WITH VERN GRIFFIN IN VANCOUVER WASHINGTON."[2]

In the affidavit, Shadwick described his training, experience and knowledge relating to the sale and manufacture of methamphetamine, from which he knew that laboratory equipment, precursor chemicals and the finished product of methamphetamine are commonly hidden away from a residence, that the chemicals used in manufacturing methamphetamine have a strong odor, often described as similar to cat urine, that plastic funnels and other equipment are often used in the process of manufacturing methamphetamine and that methamphetamine manufacturers frequently maintain sales records, shipping receipts, telephone and address books and other information related to the operation.

---

[2] The affidavit also said that, during the two years before the discovery of the methamphetamine equipment in October, 1988, the police had received information from both anonymous and known sources that Rowden continued to be involved in the methamphetamine manufacturing enterprise. Defendants contend, and the trial court found, that that information could not establish probable cause, because the affidavit recited no facts to show the reliability of the anonymous and named informants. ORS 133.545(4). We conclude that the affidavit is sufficient even without that information and, therefore, we do not address this issue.

Attached to the affidavit were aerial photographs of defendants' property. The affidavit recites:

"THAT THROUGH THESE SAME PHOTOGRAPHS, I HAVE BEEN UNABLE TO OBSERVE ANY OTHER RESIDENCES, OR ANY OTHER OBVIOUS LOCATIONS, EXCEPT FOR THE TRAILER, SHED, AND OUTBUILDINGS, THAT WOULD BE A LIKELY SPOT USED TO 'COOK' METHAMPHETAMINE. IT ALSO APPEARS THAT THE MAIN ROAD TO THE TRAILER AND SHED ARE THE ENTRANCE TO THE EGGE SAND AND GRAVEL LOT."

On the basis of the affidavit, a search warrant was issued.[3] It was executed the next day. Defendants moved to suppress. The trial court granted the motion, finding that

"[t]he information in the Affidavit for Search Warrant relating to events in 1986, was removed by over two years in time from the date of the affidavit, and was therefore stale, and could not be properly considered by the magistrate in determining whether probable cause existed to search."

The trial court then held that the remaining information in the affidavit did not establish probable cause. The state contends that the information in the affidavit, taken as a whole, establishes probable cause to believe that evidence of an illegal methamphetamine manufacturing operation would be found on defendant's property. On appeal, we review the trial court's order for errors of law. ORS 138.220. We resolve doubtful or marginal cases in accordance with the preference for warranted searches. *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Prince,* 93 Or App 106, 112, 760 P2d 1356, *rev den* 307 Or 246 (1988).

It is fundamental that search warrants must be supported by probable cause. Or Const, Art I, § 9; US Const, Amend IV and XIV. Probable cause "means that the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach,* 298 Or 375, 380-81, 692 P2d 602 (1984). Although probable cause to search

---

[3] The warrant authorized a search of the mobile home and shed located at 90518 Coburg Road, Eugene, including outbuildings, curtilage and persons, for evidence of the unlawful manufacture of methamphetamine, including methamphetamine, precursor chemicals, equipment and business records.

must exist when a warrant is issued, "that does not mean that, simply because some information in an affidavit is old, a magistrate must exclude it when deciding whether the requisite probable cause exists." *State v. Howell,* 93 Or App 551, 559, 763 P2d 179 (1988), *rev den* 307 Or 405 (1989). Rather, the information presented must be evaluated in its *totality. State v. Howell, supra.* The lapse of time after which information becomes stale depends on all the circumstances. *State v. Ingram,* 251 Or 324, 327, 445 P2d 503 (1968).

In *State v. Howell, supra,* we found that information from the early 1980's, together with more recent information, was not too stale to be considered in determining probable cause to search in 1987. 93 Or App at 559. In *Howell,* the defendant's neighbors had observed marijuana plants growing on his property and saw him carry marijuana from his greenhouse in the early 1980's. The neighbors also noticed that the defendant used very bright lights and exhaust fans in a large barn. They described the defendant as secretive. Information was first reported to the police in 1985 and was investigated in 1987. The police ran checks on owners of vehicles who had visited the defendant in the early 1980's and found that one visitor had been arrested in 1974 for possession of marijuana and that another had been convicted in 1982 of cultivating marijuana. In 1987, the week before the warrants were issued, the police watched the defendant's property. They observed no marijuana, bright blue lights or exhaust fans near the barn. However, at another property owned by the defendant, they observed smoke coming from the chimney of the shop and saw him load a propane tank into a pickup truck. Checking with the power company, they found that power consumption at the site was very high. We concluded that the information provided by the defendant's neighbors, together with the information obtained independently by the police, was sufficient to provide probable cause to believe that the defendant had an ongoing marijuana growing operation, which he had moved to the new property.

We believe that the facts of this case are even stronger support for probable cause than the facts in *Howell.* The 1986 information gave the police a detailed background of Rowden's illegal activities. That knowledge, combined with the neighbors' discovery of the hidden equipment, its subsequent disappearance and Egge's apparent lie about contacting

the state police, provided probable cause to believe that Rowden's activities were continuing in 1988. The trial court's emphasis on the 1986 information, which it viewed as stale, indicates that it was evaluating the affidavit in piecemeal fashion. When viewed as a whole, the affidavit demonstrates the probability of ongoing criminal activity, repeated at the same location and using equipment of a durable nature. We conclude that the affidavit established probable cause to believe that evidence of methamphetamine production would be found on defendants' property. The trial court erred in granting the motion to suppress.

Reversed and remanded.