Submitted October 31, 2011, convictions on Counts 1 and 2 reversed and remanded; otherwise affirmed November 15, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KERY K. HUFF,
*Defendant-Appellant.*

Coos County Circuit Court
09CR1052; A145156

291 P3d 751

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Jeremy C. Rice, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for one count each of unlawful delivery of methamphetamine (Count 1), ORS 475.890, and unlawful possession of methamphetamine (Count 2), ORS 475.894, both as commercial drug offenses, ORS 475.900(1)(b).[1] He contends that the trial court erred in denying his motion to suppress evidence obtained from a search of his residence on the ground that the affidavit in support of the warrant was insufficient to establish probable cause for the warrant to issue.[2] We agree and, therefore, reverse and remand on those counts.

The facts, as they pertain to the issue on appeal, are undisputed. On October 8, 2009, Detective Floyd, a sergeant with the Coos County Sheriff's Department and director of the South Coast Interagency Narcotics Team (SCINT), applied by telephone for a warrant to search defendant's residence, *viz.*, a recreational vehicle (RV), and an outbuilding, described as a silver "Quonset hut style shop" (the shop). Floyd's telephonic affidavit supporting the application contained the following information.

On January 14, 2006—almost 45 months earlier— Floyd had seized a commercial quantity of crystal methamphetamine from defendant at the shop. On October 8, 2009—the same day that Floyd applied for the search warrant—Floyd had responded to a call from Larson, a parole and probation officer, indicating that defendant and another person, Burback, had been the subject of a traffic stop very early that morning. Larson told Floyd that both men "were on his case load for the possession of methamphetamine" and that he wanted to conduct a home visit to make sure that defendant was not violating the terms of his supervision by possessing methamphetamine.

---

[1] Defendant was also charged with conspiracy to commit unlawful delivery and unlawful possession of methamphetamine. Those counts were dismissed on the state's motion.

[2] Defendant also raises several assignments of error regarding nonunanimous jury verdicts. We reject those arguments without discussion. *See, e.g., State v. Cobb*, 224 Or App 594, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009); *State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 52 (2009).

The officers went to defendant's address, where defendant was living in the RV. Burback was also present, as was a third person, Hasner. Defendant gave Larson consent to search the RV, and Larson promptly found approximately a quarter of a gram of methamphetamine and a "meth pipe with residue." The methamphetamine was in a bindle attached with a magnet to a metal box that defendant identified as belonging to him. Hasner, who had been living in the RV with defendant for over three months, refused consent to search her property, including another metal lock box located next to the box with the methamphetamine attached to it.[3]

Floyd knew from previous police contacts that defendant's mother occupied another structure on the property. He contacted her, and she told him that defendant spent a lot of time in the shop, where he had set up an office with a computer.

Floyd's affidavit also recounted his law enforcement training and experience; the extent of that testimony was as follows:

"I am a Sergeant and Director of the South Coast Interagency Narcotics Team, and I have been a Deputy with the Coos County Sheriff's Department for over thirteen years and have over seventeen years of total law enforcement experience, which includes four years as a Reserve Deputy for the Coos County Sheriff's Office. I have attended the Oregon Department of Public Safety Standards and Training Academy, DPSST[,] and currently hold an advanced Police Certificate, that [as] part of my training as a police officer[,] I've had on the job training and experience related to the investigation of possession of controlled substance specifically in methamphetamine. As part of my training I've received instructions in all facets of law enforcement. That from this said training I have knowledge of State Statute that I can apply for a Telephonic Search Warrant. That during my tenure as a police officer I've been involved in over fifty related investigations involving possession of methamphetamine and I've also assisted in at least ten search warrants that have been issued during these investigations that have led to the arrests, successful prosecution and the subsequent

---

[3] Burback consented to a search of his person; no contraband was found, and he was released.

prosecution of suspects and that I've applied for Telephonic Search Warrants in the past and recovered items of the initial search."

Based on the above, Floyd asserted that he had probable cause to believe that defendant and Hasner "are in possession of methamphetamine" and that "evidence of said crimes is located in the [RV] and * * * shop under the control and/or custody of [defendant] and [Hasner]." The evidence to be seized included "a quantity of Methamphetamine/ Amphetamine" and "methamphetamine/amphetamine and marijuana distribution paraphernalia," as well as a comprehensive list of items, such as documents, records, computer equipment, photographs, receipts, cash and currency equivalents, and the like,

"all of which are fruits, evidence and instrumentalit[ies] of crimes[,] that is, the manufacture of methamphetamine/ amphetamine, the possession with intent to distribute methamphetamine/amphetamine, and the distribution of methamphetamine/amphetamine, a conspiracy to manufacture, distribute, and to possess methamphetamine/ amphetamine by [defendant] or Hasner[.]"

The trial court authorized the warrant, and Floyd, Larson, and another officer executed it, finding, in the RV, "tally sheets," scales, packaging materials, syringes, a smoking pipe or "snort tube," evidence of defendant's domicile at the address, a blackjack, and several bindles containing methamphetamine. They also found $851.02 in cash on defendant's person. No evidence was seized from the shop.

Defendant moved to suppress the evidence obtained from the search on the ground that "the search warrant affidavit fails to recite probable cause sufficient for a warrant to issue." In an affadavit supporting the motion, he contended that, other than the fact of the discovery of a quarter gram of methamphetamine and the pipe with residue, "nothing was added by the affidavit to support issuance of a search warrant for anything more than the crime for which probable cause already had been established." At the hearing on his motion, defendant argued that "the search warrant affidavit did not recite enough additional information to go beyond what was originally searched for and found."

The trial court denied defendant's motion to suppress, determining that the affidavit was sufficient to establish probable cause based on the following facts: the discovery of the drugs, in a container associated with a locked box, and the pipe; defendant's criminal history involving commercial drug activity; and defendant's association with Burback, "who has a documented drug history," on two occasions within a 24-hour period.

As noted above, after a jury trial, defendant was found guilty of unlawful delivery of methamphetamine and unlawful possession of methamphetamine, both as commercial drug offenses under ORS 475.900(1)(b).[4]

On appeal, defendant contends that the court erred in denying his suppression motion because the facts in the affidavit supporting the search warrant "do not support a reasonable conclusion that it was more likely than not that defendant had more drugs in his home."[5] (Boldface omitted.) In support of that view, he contends that the information about prior drug activity on the property should not be considered because it is stale and the recent discovery of a "personal use" amount of drugs is not sufficiently similar to "refresh" it. He also argues that the other facts, specifically, observation of a "user amount of methamphetamine and a smoking pipe" and the fact that defendant was in the company of another person who was also on supervision for a drug crime, are insufficient, either individually or collectively, to establish probable cause to issue the warrant.

The state, on the other hand, disputes that the information about defendant's 2006 drug activity is stale, contending that it is "still probative because of all the new information in the affidavit." In the state's view, taken

---

[4] ORS 475.900(1)(b) provides that the crime of possession, delivery, or manufacture of a controlled substance is a commercial drug offense—resulting in a higher crime seriousness classification under the sentencing guidelines—if it is accompanied by at least three of several factors enumerated in the statute. In this case, the indictment charged that the offenses were commercial drug offenses because defendant possessed $300 or more in cash, ORS 475.900(1)(b)(B); possessed material used for the packaging of controlled substances, ORS 475.900(1)(b)(D); and possessed drug transaction records or customer lists, ORS 475.900(1)(b)(E).

[5] Defendant does not raise any issues concerning the scope of the warrant, either as to the areas to be searched or the property to be searched for.

together, defendant's drug history, his fraternizing with another person with a known drug history, the discovery of methamphetamine attached to a "lock box" in his residence, and his spending a lot of time in the shop that he had previously used as a drug distribution center could support a reasonable magistrate's conclusion "that it is more likely than not that evidence of drug activity would be found on the premises." (Internal quotation marks omitted).

In reviewing a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a warrant, we consider "whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Castilleja*, 345 Or 255, 270, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008).[6] We consider "all inferences that fairly may be drawn from those facts to determine whether probable cause exists." *Id.* (internal quotation marks omitted). The probability standard "requires more than a mere possibility, but less than a certainty." *State v. Wilson*, 178 Or App 163, 167, 35 P3d 1111 (2001) (citations omitted). In other words, the information "must be such that a reasonable person could conclude that it is *more likely than not* that the objects of the search will be found" at the locations to be searched. *State v. Castro*, 194 Or App 109, 115, 93 P3d 815 (2004) (emphasis in original omitted; other emphasis added). We agree with defendant that the affidavit in this case fell short of that standard.

As a starting point, we have held that the current possession of a small amount of illegal drugs in a person's home does not give rise to probable cause to search the home for additional drugs. *See, e.g.*, *State v. Mepham*, 46 Or App 839, 613 P2d 500 (1980). In *Mepham*, an officer who was attempting to arrest the defendant for attempting to obtain drugs unlawfully went to the defendant's house and saw,

---

[6] The probable cause requirement derives from statute, *see* ORS 133.545(4); ORS 133.555, as well as the state and federal constitutions, *see* Or Const, Art I, § 9; US Const, Amends IV and XIV.

through an open doorway, a container of marijuana on a coffee table. The officer submitted a search warrant request, supported by an affidavit in which he set out those facts. *Id.* at 842 n 1. The warrant issued and evidence was discovered. The trial court suppressed the evidence (except for that which was in plain view of the officers), reasoning that "observation of a container of marijuana does not give rise to probable cause to believe that more drugs would be found in the residence." *Id.* at 842. The state appealed, and we affirmed. Echoing the trial court, we concluded that nothing in the affidavit "warrant[ed] the reasonable suspicion that the container was not the household's entire supply." *Id.*

We reached the same result in *State v. Kittredge/Anderson*, 36 Or App 603, 585 P2d 423 (1978), where the only facts supporting issuance of the warrant were that a confidential reliable informant had seen marijuana 96 hours earlier at the premises that the officers sought to search. We held that, without additional information about, for example, the quantity of marijuana seen, in whose possession it was seen, or the prior history of the suspects, the affidavit did not permit an inference that it was probable that there would continue to be drugs at the premises. *Id.* at 606-07; *accord State v. McGee*, 45 Or App 13, 15, 607 P2d 217 (1980) (affidavit reciting only that a confidential reliable informant was in the defendant's residence within 48 hours before the affidavit was executed and, while there, observed a "quantity of marijuana," was insufficient to establish probable cause to search the residence for marijuana).

Instead, additional facts beyond the current possession must be presented to establish the probability that further evidence of criminal activity will be found at the suspected location. For example, as we observed in *Kittredge/Anderson*, "[i]f large quantities [of marijuana] were observed, there would exist at least a permissible inference that *** the premises were being used as a market for the sale of marijuana." 36 Or App at 606; *see also McGee*, 45 Or App at 15 (under *Kittredge/Anderson*, a further detailing of "how much marijuana was seen in the house, who normally occupied the house, who actually possessed the marijuana, *** whether the suspect had a history of drug use or dealings," or "other relevant facts,

might have rendered the affidavit sufficient to establish probable cause"); *State v. Black / Black*, 36 Or App 613, 617, 585 P2d 44 (1978) (evidence of long history of drug dealing and observation of various kinds of drugs on the suspected premises on many occasions supported probable cause to search the premises); *cf. State v. Miebach*, 52 Or App 709, 713, 629 P2d 1312, *rev den*, 291 Or 771 (1981) (distinguishing *Mepham* on the basis that the affidavit contained additional relevant facts, including two recent occasions on which the affiant was present when the defendant was arrested for crimes involving controlled substances).

Here, the affidavit established the presence of only a small quantity of methamphetamine in defendant's home—specifically, a quarter of a gram—and a pipe containing residue, both of which suggest personal use of the drug. In other words, neither of those facts supports an inference that defendant was engaged in the *sale* of methamphetamine from the location, which, in turn, could establish the probability that additional quantities of the drug would be discovered in defendant's residence and property. Accordingly, we look to the additional details set forth in the affidavit to see whether they are sufficient, when combined with those facts, to make it probable that additional drugs—or other evidence of drug activity—would be found at the location. *Kittredge / Anderson*, 36 Or App at 606-07.

Those details are sparse. First, the affidavit states that, approximately 45 months earlier, law enforcement officers had seized a commercial quantity of crystal methamphetamine from defendant at the same location. As noted, defendant contends that that information was "stale," and, therefore, simply should not have been considered in determining whether probable cause existed to support issuance of the warrant. Although defendant acknowledges that otherwise stale information can be "refreshed" by more recent information indicating continuing criminal activity, in his view, that concept is inapplicable in this case because the recent drug discovery is "so different in kind" from the prior activity.

In *State v. Gale / Rowden*, 105 Or App 489, 496-97, 805 P2d 158, *rev den*, 311 Or 427 (1991), we explained that,

"[a]lthough probable cause to search must exist when a warrant is issued, 'that does not mean that, simply because some information in an affidavit is old, a magistrate must exclude it when deciding whether the requisite probable cause exists.' *State v. Howell*, 93 Or App 551, 559, 763 P2d 179 (1988), *rev den*, 307 Or 405 (1989). Rather, the information presented must be evaluated in its *totality*. [*Id.*] The lapse of time after which information becomes stale depends on all the circumstances. *State v. Ingram*, 251 Or 324, 327, 445 P2d 503 (1968)."

(Emphasis in original.) We have also emphasized that "[e]vidence that conduct has continued over time can support an inference that it was ongoing at the time the warrant was issued." *State v. Chase*, 219 Or App 387, 393, 182 P3d 274 (2008).

Here, the current discovery of drugs at the same location as the prior seizure of drugs provides an indication that some criminal drug activity was ongoing at the suspected location. It is thus distinguishable from *Castro*, upon which defendant relies for his contention that the prior information must be excluded from consideration. In *Castro*, we held that 16-month-old information regarding a methamphetamine production and distribution operation at a certain residence was insufficient to establish probable cause that criminal activity would still be occurring at that location, where the only recent information was of a drug transaction between a prior occupant of the residence and a third party at an undisclosed location. 194 Or App at 119. Thus, and significantly, in *Castro* (and unlike in the present case), there was *no recent* information connecting criminal activity with *the location that was the subject of the search warrant application*. It was on that basis that we also distinguished *Castro* from cases in which we had approved the use of even older information, specifically *Gale / Rowden*, 105 Or App at 497-98 (holding that the trial court erred in not considering two-year-old information that the defendant was involved in manufacturing methamphetamine, given a two-week-old report of the discovery of a methamphetamine lab near the defendant's residence), and *Howell*, 93 Or App at 556-59 (concluding that seven-year-old information about the defendant's marijuana-growing operation at one location

and more recent observations of the defendant's activities and power usage data at a different location was sufficient to provide probable cause to believe that evidence of a marijuana-growing operation would be found on both properties).

On the other hand, as defendant emphasizes, the nature of the recent criminal activity on the premises—that is, the discovery of a small amount of drugs there on the day the warrant request was made—differs significantly from the prior activity. *See State v. Johnson*, 186 Or App 186, 193, 62 P3d 861 (2003) (character of the crime or thing to be seized is a factor in the staleness analysis). Specifically, the 2006 information, because it involved the seizure of a "commercial quantity" of methamphetamine, indicated that defendant was involved in a drug distribution operation on the premises. The recent information, in contrast, tends toward a suggestion of personal use rather than the continuation of a drug-distribution operation.

Considered in the totality of the circumstances, *Gale/Rowden*, 105 Or App at 497, we conclude that, even if the information about the nearly four-year-old seizure is not impermissibly stale, it is, nonetheless, insufficient to allow the reasonable conclusion that evidence of drug distribution would probably be found on defendant's property. *See Johnson*, 186 Or App at 192-93 (eight-year-old conviction for possession of less than one ounce of marijuana of little, if any, significance in determining probable cause to search for evidence of a marijuana-growing operation). Nor does the other recent information in the affidavit—that defendant was serving post-prison supervision for possession of methamphetamine, associating with another person under supervision for a possession offense, and spending time in the shop—support an inference that defendant continued to be engaged in the distribution of methamphetamine on the property. *See id.* at 193 (the fact that Johnson, one of the defendants, knew Barkau, the other defendant, "is hardly a basis on which one reasonably could conclude that Johnson was engaged in criminal activity with Barkau"). And, there is nothing in the affidavit that might provide the necessary linkage. There is no averment from the officer regarding, for example, the typical recidivist behavior of drug dealers or why, based on the officer's training and experience, the

possession of a user amount of drugs by a former dealer or consorting with another prior drug offender *might* indicate that defendant was continuing to deal in illegal substances. *See State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("Facts derived from training and experience may contribute [the] necessary factual nexus in a determination of probable cause."); *Wilson*, 178 Or App at 171 (under *Goodman*, the weight to be given to representations derived from an officer's training and experience "depends on the totality of the facts contained in the affidavit").[7]

The affidavit is also insufficient to support a reasonable inference that additional "user" amounts of methamphetamine or methods of ingestion (containing traces or other evidence of the drug) would probably be found on defendant's property. As to that issue, our analysis in *State v. Kolb*, 251 Or App 303, 283 P3d 423 (2012)— although it involves the less stringent standard of reasonable suspicion—is helpful.

In *Kolb*, we considered whether a defendant's manifestations of recent drug use supported reasonable suspicion that the defendant possessed evidence of the crime of unlawful possession of a controlled substance sufficient

---

[7] In *Chase*, for example, information supporting the issuance of a warrant to search the defendant's property for evidence of the possession, delivery, and manufacture of methamphetamine included the officer's declaration that, from his training and experience, "he knew that persons who sell drugs are frequently users who generally 'keep personal use amounts on hand in their homes,'" and "'often keep larger inventories of controlled substances for future sales within their residences.'" 219 Or App at 390. The officer also declared that, "in his experience, 'person[s] who sell[] or possess[] methamphetamine will have firearms' to protect themselves, their drugs, and their money," *id.* at 391 (brackets in original), which, in turn, supported an inference, from recent evidence that an armed lookout had been observed on the suspect property, that drug sales were continuing there at the time the warrant was issued, *id.* at 394; *see also State v. Keerins*, 197 Or App 428, 106 P3d 166, *rev den*, 338 Or 681 (2005) (eight-month-old information indicating "drug activity of some sort" at the suspect house combined with recent discovery of more than a user amount of heroin on the person of one of the house's residents and the officer's affidavit establishing that drug dealers keep evidence of their crimes at their homes sufficient to establish probable cause). *But see Wilson*, 178 Or App at 172 (where the affidavit stated only that, at some time in the past, the defendants had sold an undisclosed amount of methamphetamine in a location other than their home, the officer's experience that drug dealers often have evidence of drug activity at their residence was "too 'unconnected to objective facts derived from other sources'" to provide probable cause to search the residence) (quoting *Goodman*, 328 Or at 328)).

to justify the stop of the defendant. The officer testified, based on his training and experience, that "[p]eople who usually are under the influence had to obviously take the methamphetamine. It's very common that they have pipes, needles, syringes, paraphernalia with them when they are under the influence," *id.* at 307. The trial court agreed, reasoning that it was a "fair inference" that a person under the influence of a controlled substance would have the substance in his or her possession in the form of residue on implements used to ingest the substance. *Id.* at 308. In reversing the trial court, we discussed the impermissible stacking of inferences that was required to reach that conclusion. As we explained, "[i]f the premises collectively are impermissibly speculative, or if any of the premises is individually insupportable, the stop was not supported by reasonable suspicion." *Id.* at 313. Applying that principle, we seriously questioned whether it was permissible for the trial court to infer from the officer's testimony that persons under the influence of methamphetamine would not only possess implements of that use but would also retain those implements—a connection that was not explicit from the officer's testimony. Even if that were a permissible inference, however, the remaining inferences required to arrive at reasonable suspicion of possession—that retained implements often bear evidence of prior use and that that proposition applies specifically to methamphetamine use— were entirely speculative. *Id.* at 314. Nothing in the officer's testimony, we held, would substantiate those premises; therefore, the trial court erred in concluding that the stop was supported by reasonable suspicion based on the proposition that the defendant likely possessed the instrumentalities used to ingest the substance. *Id.* at 315.

In this case, the affidavit must satisfy the more demanding standard of probable cause. *See State v. Daniels*, 234 Or App 533, 538, 228 P3d 695, *rev den*, 349 Or 171 (2010) ("'Probable cause' is a more rigorous standard than mere suspicion; even a well-warranted suspicion does not suffice, because 'a suspicion, no matter how well founded, does not rise to the level of probable cause.'" (Quoting *State v. Verdine*, 290 Or 553, 557, 624 P2d 580 (1981).) Moreover, the affidavit in this case does not provide *any* potential linkage between

the presence of some drugs and the likelihood of more drugs or the presence of a single implement of use (the pipe) and the likelihood of more drugs or other implements that might bear traces of the drug, let alone a direct one.[8] And, even if it could somehow be inferred that, given the presence of a user amount of methamphetamine at the location, it was probable that some implement or manner of ingesting the substance would also be found, and that that implement would also bear traces of methamphetamine, that proposition was undercut here because such an implement had already been seized.[9] In other words, on top of the above-described "stacked" inferences, the issuing magistrate would also have to infer that multiple implements bearing evidence of recent use would probably be found along with the drugs.

In sum, as we said in *Wilson*, "although the facts suggest a possibility that criminal evidence might be found at defendant's residence, that is not the standard to be met here." 178 Or App at 172. The affidavit simply does not provide enough facts to permit a magistrate reasonably to conclude that it is more likely than not that additional evidence of criminal drug activity would be found on defendant's property. The trial court therefore erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

Convictions on Counts 1 and 2 reversed and remanded; otherwise affirmed.

---

[8] The fact that the methamphetamine was discovered attached to a locked box does not, in the absence of further explanation as to the significance of that circumstance, add anything to the analysis.

[9] We further note that the affidavit in support of the warrant makes no attempt to explain why the officer's training and experience led him to believe that additional drugs (or implements) for defendant's personal use would be found there.