Argued and submitted January 21, reversed and
remanded for a new trial March 3, 1980

## STATE OF OREGON,
### *Respondent,*
### *v.*
## TERESA MARIE EMBRY,
### *Appellant.*

### (No. C 78-09-14547, CA 15532)

607 P2d 224

Marianne Bottini, Deputy Public Defender, Salem,
argued the cause for appellant. With her on the brief
were Gary D. Babcock, Public Defender, and Judith H.
Stone, Certified Law Student, Salem.

Christian W. Van Dyke, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals from a conviction for possession of a controlled substance. The trial court denied her motion to suppress amphetamines obtained during a search conducted pursuant to her arrest.[1] The issue here is whether the arresting officers had probable cause to arrest defendant. We hold that the officers lacked probable cause, and reverse and remand.

Early in the afternoon on August 16, 1978, Officer Huff, an undercover narcotics officer with the Portland Police Department, received a call from a woman who asked if he wanted to buy some cocaine. After answering yes, he spoke with a man who arranged a meeting so that Huff could buy a sample. Huff later met the man, Bobby Embry (Bobby), who is defendant's husband, in Bobby's van, along with a woman, whom Huff was unable to identify. He purchased one gram of cocaine from Bobby. At that time, Huff gave Bobby his telephone number and told him he was interested in buying a larger quantity of cocaine.

Later that day, Bobby called Huff and arranged to meet Huff at Bobby's apartment. Huff and Officer Lovenborg, another undercover officer, went to the apartment and there met defendant for the first time. In the apartment, Huff bought another three grams of cocaine from Bobby. Bobby explained that he had arranged for a larger deal to take place at Coco's, a restaurant in Sylvan. Defendant was present during the sale of the three grams and the discussions about the larger deal, but did not participate in either the sale or the discussion. During this time, Huff and Bobby left the apartment at least twice. Huff telephoned from a phone booth to tell police that the deal would occur at Coco's, and that Bobby Embry would be the middle-man. Approximately one-half hour after Huff and Lovenborg arrived, the four left the apartment, the Embrys in one car and Huff and Lovenborg

---

[1] Following the denial of the motion, the trial court ruling on stipulated facts found defendant guilty of possession of a controlled substance, ORS 475.992.

in another, and drove to Coco's. Police had had the apartment under surveillance, and three or four unmarked cars followed the Embrys, Huff and Lovenborg.

At the restaurant, Bobby Embry recognized at least three of the unmarked cars[2] and became suspicious that Huff was an informant. He met a person outside the restaurant but no money or drugs changed hands. Bobby telephoned the police, stating that there would be no drug transaction as long as police were present. This message was relayed to the officers surveilling the scene. Bobby and Huff then checked each other for electronic transmitting devices hidden on their persons. In order to determine whether Huff was working for the police, Bobby directed Huff to go to Huff's car and open the trunk, a signal used by narcotics officers to show the completion of a drug sale. They returned to their table in the restaurant. Approximately 10 to 15 minutes later, Officer Johnston and other officers entered the restaurant in response to the signal and arrested defendant and Bobby Embry. A search of defendant uncovered a vial of amphetamines.

In determining whether the arresting officers had probable cause, we may not impute Officer Huff's knowledge to those officers. Rather:

> "* * *[T]he searching officer personally must have information which constitutes probable cause, or the searching officer must be directed to make the search by an officer who personally has that knowledge. It is sufficient if the officer making the search on his own knowledge has secured the knowledge from another officer." *State v. Groda*, 285 Or 321, 324, 591 P2d 1354 (1979).

*See also State v. Mickelson*, 18 Or App 647, 650-51, 526 P2d 583 (1974).

The state concedes that "the record does not support the conclusion that Officer Huff personally related information to the other officers which was, alone,

---

[2] Bobby Embry was also an undercover narcotics officer.

sufficient to establish probable cause." It argues that from the following information, the other officers independently had probable cause.

"(1) Officer Huff related to Officer Johnston that he had purchased cocaine from Embry and a woman in Embry's van and that another buy was set up at Embry's apartment.

"(2) Officer Johnston was part of the surveillance team which watched Mr. Embry's apartment as Officer Huff and Officer Lovenborg entered the apartment for the express purpose of purchasing cocaine.

"(3) After Huff and Lovenborg were in Embry's apartment, Officer Johnston saw the defendant and Mr. Embry leave in the same vehicle and followed the undercover officers Huff and Lovenborg to Coco's.

"(4) When Officer Johnston got to Coco's he observed Huff, Lovenborg, Mr. Embry and the defendant at Coco's together.

"(5) While observing Huff, Lovenborg, Mr. Embry and defendant at Coco's, Officer Johnston observed Officer Huff make the prearranged signal of opening the trunk of his auto as an indication that a drug transaction had occurred and that an arrest should be made."

We observe as to point "(1)" that there is no evidence in the record that Huff told Johnston specifically about the woman in Bobby's van. Thus, there is no evidence from which the state can show that Johnston could have inferred that the woman in the van was defendant. Huff testified at the suppression hearing that the woman was not defendant and he still did not know who she was.

There is nothing in the record to suggest that Johnston or the other officers watching Bobby's apartment were able to determine from their surveillance that defendant had any connection with or, for that matter, awareness of, the illegal activities in the apartment. Johnston testified that he first saw defendant when she and the others left for Coco's. The other points offered by the state merely show that the officers on

[45]

surveillance observed defendant's association with her husband and her presence at Coco's. Defendant's mere presence at the scene of illegal activities and "propinquity to others independently suspected of criminal activity," without more, are insufficient to give rise to probable cause. *Ybarra v. Illinois*, 444 US 85, 100 S Ct 338, 62 L Ed 2d 238, 245 (1979). *See United States v. Di Re*, 332 US 581, 68 S Ct 222, 92 L Ed 210 (1948).

Since the arrest was unsupported by probable cause, the evidence seized in the ensuing search must be suppressed. *Wong Sun v. United States*, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

Reversed and remanded for a new trial.