Argued and submitted August 12, 1992, reversed and remanded for new trial
May 12, 1993

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID FLOYD STOCKTON,
*Appellant.*

## (90-06-1178; CA A72210)

852 P2d 227

Robert J. McCrea, Eugene, argued the cause for appellant. With him on the brief was McCrea, P.C., Eugene.

Youlee Yim You, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Chief Judge, and Deits and Durham Judges.

DEITS, J.

**DEITS, J.**

Defendant appeals his convictions for manufacture and possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress and to its partial denial of his motion to controvert.[1] At issue in this appeal is the sufficiency of the affidavits supporting the issuance of three search warrants. We reverse and remand.

On June 7, 1990, police obtained a warrant to search the structures and vehicles on defendant's property located on South Ruby Loop in Linn County, which they executed on June 11. They first searched a barn-type structure on the property, part of which had been partitioned off and insulated to make a "grow room." Inside the barn, they found three diesel generators, plastic pipe and fittings, "Permalite," growing medium, 105 5-gallon buckets, a water heater and three grow lights and light ballasts. They also found a checkbook in the name of "Nancy Howell," with an account balance of approximately $2,400, and a receipt from the cash purchase of a generator from "Battin's Power Service." The police then searched the camp trailer near the barn and found marijuana "roaches," less than an ounce of marijuana, a spoon with white powder residue and a publication titled "Cocaine Users Handbook."

After this search, the police obtained two additional warrants: the first to search two mobile home residences located 15 miles away on defendant's property at 30795 and 30799 Larson Drive; the second to search a shed at 30799 Larson Drive. When the police searched the mobile homes and shed, they found evidence resulting in the charges in this case.

Because defendant's convictions resulted from evidence seized during the search of the Larson Drive residences, and those warrants relied, in part, on the Ruby Loop affidavit, we first address defendant's arguments regarding that affidavit. His first assignment of error is to the trial court's partial denial of his motion to controvert the Ruby

---

[1] Through defendant's motion to controvert, some of the material in the affidavits has been excised, and we do not consider the excised portions here.

Loop affidavit. ORS 133.693, which governs motions to controvert affidavits, provides, in pertinent part:

> "(2)  If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest *the good faith, accuracy and truthfulness of the affiant* as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness." (Emphasis supplied.)

In a motion to controvert, the moving party carries the burden of proving the affiant's lack of good faith, accuracy or truthfulness by a preponderance of the evidence. ORS 133.693(3). We review a trial court's findings for supporting evidence in the record. *State v. Ritter*, 71 Or App 282, 288, 692 P2d 158 (1984).

In the Ruby Loop affidavit, the affiant, Salsbery, recites his training and experience and facts supporting the reliability of his confidential reliable informant (CRI).[2] He then relates his conversations with the CRI: On March 26, 1990, the CRI stated that a man named David Johnson, whom he later identified by a mug shot to be defendant, had purchased the Ruby Loop property and erected a large, sealed, metal barn. The CRI described the barn as being "concealed from view." Defendant told the CRI that he was going to raise livestock, but during the few times that the CRI was on the property, he did not see any signs of livestock. The CRI noted that the barn had a "blacked-out" window, an exhaust pipe coming out of it and was situated near a load of drain rock, a well, a water tank, a number of 5-gallon buckets, a camp trailer and a tree house. The CRI also stated that a neighbor of defendant's, Charles, told him that he had heard a power generator running at night on the property, and that he saw some large "propane type tanks" being transported onto the premises. After reciting what the CRI told him, Salsbery added, "The CRI also has no reason to exaggerate or fabricate the information the CRI has provided to me." Salsbery also recited the statement of another officer, Severns, who stated that, when he had contacted a local credit bureau, it informed him that their records show defendant was last employed in November, 1988.

---

[2] Defendant does not challenge the reliability of the CRI.

■ Defendant contends that the trial court erred in failing to excise certain inaccuracies in the affidavit. He first argues that Salsbery's statement that the CRI "has no reason to exaggerate or fabricate" should be stricken as inaccurate, because he did not add the qualifier, "to my knowledge." The trial court agreed that, out of context, the statement is "technically inaccurate" and "unrealistic." Read in context, however, the trial court found the statement "not misleading to a reasonable person." We agree. It is reasonable to infer that Salsbery meant the statement to be his opinion.

■ Defendant also argues that the statement from the CRI that the barn was "concealed" was inaccurate, because it implies that the building was intentionally concealed when, in fact, it was only shielded by its natural setting. He also attacks the inclusion of statements from the credit bureau regarding his work history. Motions to controvert apply only to the affiant's statements, not to the accuracy of information provided by others. *State v. Hitt*, 305 Or 458, 464, 753 P2d 415 (1988). There is no indication that the affiant did not accurately report what he had been told.

■ Next, defendant contests Salsbery's good faith. He argues that the statements by Charles regarding the generator and the tanks should have been stricken, because Salsbery knew and did not disclose that Charles had a criminal history. Although probative of Charles' reliability, the failure to mention his criminal record does not necessarily render use of his information bad faith. Charles' statements that he heard a generator running on defendant's property and saw large tanks being transported to the property were consistent with the other information that Salsbery had gathered regarding defendant's activities at Ruby Loop. The trial court found no bad faith, and we agree. *See State v. Hermack*, 53 Or App 412, 419, 632 P2d 466, *rev den* 291 Or 893 (1981). The trial court properly denied defendant's motion to controvert the above statements.

■ Defendant also assigns error to the trial court's denial of his motion to suppress evidence seized in the Ruby Loop search. A warrant to search may issue only when the record before the judge supports a finding of probable cause to believe that the "search will discover things specified in the application." ORS 133.555(2); *State v. Carter/Grant*, 316 Or

6, 848 P2d 599 (1993). Defendant argues that the affidavit did not provide probable cause to believe that a grow operation would be found at Ruby Loop. We disagree.

■     The affidavit states that a CRI told the affiant, Salsbery, that defendant had purchased the Ruby Loop property under a different name and erected a metal barn. Although defendant told the CRI that he was going to raise livestock, there was no indication of a livestock operation. The CRI saw plastic pipes, buckets, drain rock, a water tank and a well near the structure. The barn had an exhaust pipe, its only window had been "blacked out" and a neighbor stated that he had heard a generator running at night and saw propane tanks being taken to the property. Salsbery stated that, based on his training and experience, all of those items were common factors in a marijuana grow operation. He stated that the plants need $CO_2$, which is commonly stored in tanks such as "propane type tanks," and that growers usually vent their buildings to disperse the smell of growing marijuana. We conclude that the affidavit supported a finding of probable cause to search the property for evidence of a grow operation.

Defendant next argues that, even if the Ruby Loop search was lawful, his motion to controvert the affidavits for the Larson Drive warrants should have been granted and that those affidavits do not provide probable cause to believe that the search of that property would lead to the discovery of evidence of a grow operation.[3]

The applications for the Larson Drive warrants were submitted by Severns. In the first affidavit, he described the property to be searched and incorporated the Ruby Loop affidavit by reference. In addition to reciting his training and experience, he described what was found in the search of the Ruby Loop premises, including the growing paraphernalia, the marijuana and the "Cocaine Users Handbook." The second Larson Drive affidavit for the search of the shed at 30799 Larson Drive recited much the same information as the previous affidavit, again incorporating the Ruby Loop affidavit by reference and also incorporating the first Larson

_____

[3] Defendant moved to controvert several statements in the Larson Drive affidavits. Because of our disposition of the case, it is not necessary to discuss all of the statements.

Drive affidavit by reference. It further stated that, during the search of the residence at 30799 Larson Drive earlier that day, the police found two marijuana grow rooms and a substantial amount of "dried and drying marijuana." The police also found a power meter wired to the shed, which, according to Severns, he suspected to be controlled by a timer for use in an indoor grow operation.

In addition, the affidavits state that defendant was the record owner of both 30795 and 30799 Larson Drive. When he was arrested in 1989, the car that defendant was driving belonged to Nancy Howell and contained a small amount of marijuana. Severns recited that Salsbery's CRI recognized Howell from seeing her on the property with defendant. Howell listed defendant's post office box as her mailing address for the utilities, and the affidavits identified Howell as defendant's "girlfriend." Severns also recited that, when Salsbery contacted the utility company, he was told that defendant "is receiving power at 30795 Larson Drive and that Nancy Howell is receiving power at 30799 Larson Drive"; however, when Severns also contacted the utility company, he was told that Howell was the power subscriber at both residences.

■ As we said above, the Ruby Loop affidavit was incorporated into both the Larson Drive affidavits. In defendant's motion to controvert, he challenges statements made in the Ruby Loop and Larson Drive affidavits relevant to the Larson Drive warrants. Defendant first contests Salsbery's assertion in the Ruby Loop affidavit that Howell was defendant's girlfriend. The trial court found that, although stated as a conclusion, the statement was accurate, because there were facts to support this conclusion. We agree with the trial court that the statement is accurate. The facts demonstrate that, even if defendant and Howell did not have a romantic relationship, they were close associates. They used the same post office box; defendant was arrested in 1989 driving Howell's car; Howell was seen with defendant at Ruby Loop; and Howell was the power subscriber for at least one of the Larson Drive residences, which were owned by defendant.

Defendant next attacks the conflicting statements by Severns and Salsbery contained in both the Ruby Loop and Larson Drive affidavits regarding who subscribed for power

at the Larson Drive residences. Severns was told that Howell was the subscriber at both addresses, while Salsbery was told that Howell and defendant subscribed at different addresses. Each affiant included both accounts in his affidavit. During the hearing on the motion to controvert, Salsbery and Severns testified that they had received written records from the utility company showing the subscriber at both Larson Drive residences to be Howell, but that they were not sure whether the records were accurate, so they included only what they were told over the phone. Defendant argues that the assertion that he was a power subscriber at Larson Drive was made in bad faith. The trial court found no bad faith and held that any inaccuracy was the fault of the utility company, not of the affiants. It did not excise any portion of the affidavit on this issue.

■　　To controvert evidence by challenging the affiants' good faith, defendant had the burden to present, by a preponderance of the evidence, a "substantial basis for questioning such good faith." ORS 133.693(2). The fact that the affiants included both verbal accounts from the utility company might support the trial court's finding of no bad faith, if there were no other facts in the record. However, both Salsbery and Severns knew that the written records indicated that defendant was not a subscriber at Larson Drive. The state contends that defendant is challenging a statement from the power company, and that a motion to controvert only allows a challenge to statements by the affiant. It is correct that only the affiant's statements may be challenged, *State v. Darroch*, 117 Or App 185, 187, 843 P2d 978 (1992), *rev den* 315 Or 643 (1993), but we may review an affiant's statement for objective reasonableness at the time it is made to determine good faith. *State v. Esplin*, 314 Or 296, 304, 839 P2d 211 (1992).

■　　Here, the affiants knew that one of the verbal accounts from the utility company was incorrect. They also knew that the written records indicated that Howell was the only power subscriber. We conclude that it was not objectively reasonable for the affiants to believe that defendant was a power subscriber at Larson Drive without further verification. Particularly, in view of the lack of evidence linking defendant to the Larson property, the failure to verify this

information constitutes bad faith. We conclude that defendant met his burden of proof and presented a substantial basis for questioning Salsbery's and Severn's good faith. The information that defendant was the power subscriber at the Larson Drive property should have been excised from the affidavit.

The question is whether the remaining information in the affidavits for the Larson Drive residences was sufficient to establish probable cause to believe that there would be evidence of defendant's grow operation there. We conclude that they were not. *State v. Evans*, 119 Or App 44, 47, 849 P2d 539 (1993), we held that, to support the issuance of a warrant to search a residence for evidence of a marijuana grow operation, the affidavit must show that there is a relationship between the resident and the grow operation and that there is reason to believe that marijuana or growing paraphernalia would be located on the premises to be searched.

In this case, the affidavits established that defendant owned the Larson Drive property, but there is no showing that he resided there or that he was conducting any activities related to a grow operation there. The fact that defendant associated with Howell, who apparently lived on the property, was not enough to draw an inference that evidence of his illegal activities would be found at the Larson Drive property. The connection among Howell, defendant, Ruby Loop and Larson Drive is too attenuated to support a finding of probable cause. Larson Drive is 15 miles away from Ruby Loop. Other than defendant's ownership of the property and his association with Howell, there is nothing to link the actual grow operation at Ruby Loop to Larson Drive.

We conclude that the trial court erred in failing to suppress evidence seized pursuant to the Larson Drive affidavits. Accordingly, defendant is entitled to a new trial.

Reversed and remanded for a new trial.