Argued and submitted November 6, 2002, at Lewis and Clark School of Law,
reversed and remanded in part; affirmed in part February 5, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## SHANNON KAY JOHNSON,
*Appellant.*

C001737CR; A113546 (Control)

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL JOHN BARKAU,
*Appellant.*

C001736CR; A113547

## STATE OF OREGON,
*Respondent,*

*v.*

## ALLEN HURVEY JOHNSON,
*Appellant.*

C001735CR; A113639
(Cases Consolidated)

62 P3d 861

Martin C. Habekost argued the cause for appellants and filed the brief for appellant Allen Hurvey Johnson. On the brief for appellants Shannon Kay Johnson and Michael John Barkau were Carla M. French and Ferder, Casebeer & French, LLP.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

LANDAU, P. J.

## LANDAU, P. J.

At issue in these consolidated cases is the sufficiency of an affidavit in support of warrants authorizing the search of two residences, one of defendant Michael Barkau and the other of defendants Allen Johnson and Shannon Johnson. The searches led to the discovery of evidence of marijuana grow operations at both houses. Defendants moved to suppress evidence obtained as a result of the searches of those residences. The trial court denied the motions and defendants were convicted of various drug-related offenses. We conclude that the affidavit was sufficient as to the Barkau residence and therefore affirm Barkau's convictions. We further conclude, however, that the affidavit was not sufficient to establish probable cause as to the Johnson residence. We therefore reverse the convictions as to those defendants and remand.

The relevant facts are not in dispute. Barkau's landlord called police to report that he had received an anonymous letter suggesting that Barkau was growing marijuana at the house. Police obtained Barkau's electric power usage records, which reflected that Barkau's power usage was more than three times higher than the usage of the previous tenants, a family of five. Police also conducted a thermal imaging scan of the residence, which detected areas or pockets of intense heat around certain portions of the house. Officer Sean Todd drove by the residence four times over the course of an hour. On three of the four occasions, Todd could smell the "distinct odor" of what he knew to be fresh, growing marijuana. The closest neighboring residence was at least 100 yards away. Todd also observed that Barkau had taken various security measures to protect the residence, including a fence, a "no trespassing" sign, two large and aggressive dogs, and motion sensitive electric lighting.

· Meanwhile, Todd also began investigating the Johnson residence, apparently because Allen Johnson was Barkau's employer and because Johnson had given Barkau's name to local business authorities as an emergency contact. Todd obtained electric power usage records, which reflected

usage that was significantly higher than the previous tenants. Todd conducted a further investigation of the Johnsons, which revealed that, eight years earlier, Allen Johnson had pleaded guilty to possession of less than one ounce of marijuana.

Todd prepared an affidavit in support of an application for a warrant to search the Barkau residence for evidence of a marijuana grow operation. His affidavit, among other things, noted the anonymous tip and the recent odor of growing marijuana. It also explained that the unusually high power usage was consistent with the maintenance of an indoor marijuana grow operation. In addition, the affidavit noted that the security measures suggested that Barkau was growing marijuana. In Todd's experience, persons who grow marijuana indoors often take such measures to protect their operations.

Todd added to the affidavit information to support an application for a warrant to search the Johnson residence, as well. In particular, Todd noted the power usage information, the fact that Allen Johnson knew Barkau, and the fact that Allen Johnson had previously pleaded guilty to possession of marijuana.

Upon the execution of the warrants, police discovered evidence of marijuana growing at both residences. Barkau was charged with possession and manufacture of a controlled substance. Allen Johnson was charged with possession of a controlled substance and endangering the welfare of a minor. Shannon Johnson was charged with possession of a controlled substance.[1]

All three defendants jointly moved to suppress the evidence obtained as a result of the searches of the two residences. The trial court concluded that, excluding the anonymous tip, the information contained in the warrant was sufficient to establish probable cause to believe that police would find evidence of marijuana grow operations at both residences and denied the motions.

---

[1] All three defendants were charged with other offenses, but those charges were later dismissed and are not at issue in this appeal.

On appeal, all three defendants assign error to the trial court's denial of their motion to suppress. While the appeal was pending, the United States Supreme Court decided *Kyllo v. United States*, 533 US 27, 121 S Ct 2038, 150 L Ed 2d 94 (2001). All parties agree that, in light of that decision, the results of the thermal imaging cannot be considered in support of the search warrants. The issue is whether, without that evidence, Todd's affidavit remains sufficient.

We begin with the sufficiency of the affidavit as to the Barkau residence. In evaluating the sufficiency of a search warrant affidavit, we determine, as a matter of law, whether a "neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983). In doing that, we construe the affidavit " 'in a common-sense, nontechnical and realistic fashion.' " *State v. Charlesworth/Parks*, 151 Or App 100, 116, 951 P2d 153 (1997), *rev den*, 327 Or 82 (1998) (quoting *State v. Evans*, 110 Or App 46, 51, 822 P2d 1198 (1991)).

In this case, the state argues that the warrant is supported by three facts: (1) Todd smelled an odor of fresh, growing marijuana clearly emanating from the Barkau residence; (2) the power usage records reflected extraordinarily high levels of usage that were consistent with the maintenance of an indoor marijuana grow operation; and (3) Barkau took security measures that were consistent with the practices of individuals who engage in growing marijuana. Defendants respond by suggesting that Todd did not really smell the marijuana, that the power usage records, while relevant, are not sufficient to establish probable cause, and that the security measures are easily subject to an innocent explanation.

We conclude that the affidavit was sufficient as to the Barkau residence. The odor of fresh, growing marijuana is strong evidence of a marijuana grow operation, particularly when there are no other residences close by. *State v. Rein/Jungwirth*, 324 Or 178, 182, 923 P2d 639 (1996) (finding probable cause based on a "strong odor of marijuana" emanating from residence and from the defendants); *State v.*

*McBride*, 96 Or App 268, 277, 773 P2d 379, *rev den*, 308 Or 184 (1989) (statement in affidavit that officer smelled marijuana from sidewalk outside residence was "very significant" to establish probable cause that marijuana was growing inside the residence). Defendants' suggestion that the officer actually did not smell the marijuana simply is not consistent with our standard of review. Especially when combined with power usage data showing unusually high levels of usage consistent with indoor marijuana growing, the information is sufficient to establish the requisite probable cause. *State v. Lynch*, 119 Or App 97, 100-01, 849 P2d 556 (1993) ("a reasonable person could believe that a police officer's report of an odor of marijuana, detected at two different points near the [defendant's] house, coupled with high levels in electrical usage, makes it more likely than not that a marijuana growing operation would be discovered in the house"). The security measures, although not sufficient in and of themselves, provide further evidence in support of the trial court's probable cause determination. *See State v. Poppe*, 131 Or App 14, 23-24, 883 P2d 905, *rev den*, 320 Or 492 (1994) (security measures support inference of indoor marijuana grow operation). The trial court did not err in denying the motion to suppress as to the Barkau residence.

■ We turn to the sufficiency of the affidavit as to the Johnson residence. Once again, the state relies on three facts: (1) Allen Johnson's prior conviction for possession of marijuana; (2) Allen Johnson's "association" with Barkau; and (3) the abnormally high power consumption. Defendants respond that an eight-year-old conviction for possession of less than one ounce of marijuana is stale and that Allen Johnson's mere acquaintance with Barkau is no support for a conclusion that, more likely than not, he was involved in a marijuana grow operation with Barkau. That, defendants argue, leaves the power usage data, which alone is insufficient to establish probable cause.

We agree with defendants that the affidavit is insufficient. To begin with, Allen Johnson's prior conviction can be given little, if any, significance. The conviction is eight years old and is certainly stale. *See State v. Carter*, 132 Or App 461, 469, 889 P2d 354, *rev den*, 321 Or 268 (1995) (concluding that affidavit did not establish probable cause because, "[e]xcept

for the electrical usage information, all of the material information in the affidavit is more than one year old"). Moreover, the conviction was for possession of less than one ounce of marijuana. It is more than a minor stretch of reasoning to infer that, because one previously has possessed less than an ounce of marijuana, one probably is engaged in the production of marijuana. *See State v. Young*, 108 Or App 196, 204, 816 P2d 612 (1991), *rev den*, 314 Or 392 (1992) (in determining whether evidence is stale, "[a]nother important factor is the character of the crime or the thing to be seized").

The same must be said of the fact that Johnson was acquainted with Barkau. The fact that Barkau knew Johnson is hardly a basis on which one reasonably could conclude that Johnson was engaged in criminal activity with Barkau. *See, e.g., State v. Stockton*, 120 Or App 111, 118-19, 852 P2d 227 (1993) (although there was probable cause to link the defendant to one property, there was not probable cause to link him to the property of a close associate); *State v. Embry*, 45 Or App 41, 46, 607 P2d 224 (1980) (a "propinquity to others independently suspected of criminal activity" is insufficient to establish probable cause (internal quotation marks omitted)).

The power usage data, on the other hand, is an important factor. *State v. Russell*, 122 Or App 261, 266, 857 P2d 220 (1993). But it is not sufficient by itself. *Id.* More is required to establish probable cause. Even in combination with the evidence of the eight-year-old conviction and the fact that Barkau was acquainted with Allen Johnson, there simply is not enough evidence to permit a magistrate reasonably to conclude that it is more likely than not that the Johnson residence was a site of an indoor marijuana grow operation. The trial court therefore erred in denying the motion to suppress as to the Johnson residence.

Judgment in A113546 and A113639 reversed and remanded; judgment in A113547 affirmed.