Argued and submitted November 24, 2015, affirmed July 27, petition for review denied December 8, 2016 (360 Or 697)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY GEORGE NEWSTED,
*Defendant-Appellant.*

Coos County Circuit Court
13CR1625; A156755

381 P3d 1025

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Garrett, Judge.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for unauthorized use of a vehicle, ORS 164.135, and theft in the second degree, ORS 164.045. He assigns error to the trial court's denial of his motion to suppress evidence seized during the execution of a search warrant, contending that the affidavit in support of the warrant did not provide probable cause for the issuance of the warrant. We conclude that a reasonable magistrate could have concluded that the facts in the supporting affidavit, combined with the inferences that reasonably could be drawn from those facts, established probable cause to support the issuance of the warrant and, accordingly, we affirm.

A magistrate issued a search warrant that authorized the police to search defendant's residence in Coos Bay for stolen property. The warrant was supported by an affidavit from Sergeant Floyd. Floyd described his investigation into the stolen property in his affidavit as follows.

On September 3, 2013, Floyd began investigating the theft of the victim's property, including a green 2006 Kawasaki Mule 610 utility vehicle (UTV). Floyd conducted some internet research and found images of the model of Kawasaki UTV that had been reported stolen. The victim's UTV, unlike other brands and models of UTVs, has a front bench seat and a parking brake on the left side of the driver's seat. Floyd also noted the position of the shifting lever, steering wheel, and the safety stickers on the UTV.

In the early morning hours of September 14, Deputy Clayburn stopped defendant driving a UTV. Clayburn observed that the UTV had been stripped of the plastic fenders, seat belts, seat back assembly, front clip, roll cage, and dump bed; as a result, he was unable to confirm the make and model so he asked defendant where the serial number was located. Defendant replied that the UTV was stripped of parts and did not have a serial number because defendant had built the UTV himself. Clayburn did not believe defendant because the UTV appeared to be factory built. Clayburn issued defendant a citation for driving while suspended, told defendant to have someone pick up the UTV, and photographed the UTV. When Floyd learned about

Clayburn's encounter with defendant, he believed that the UTV was probably stolen because, based on his training and experience, Floyd knew "that thieves will often alter the appearance of items taken * * * in an attempt to avoid detection and discovery."

On September 18, while responding to an unrelated matter, Floyd saw a UTV parked in front of defendant's residence. Later that day, Floyd also learned that the victim had been burglarized a second time and had additional property stolen. On September 22, Floyd looked at the pictures taken by Clayburn of the UTV defendant had been driving and confirmed that it was the same UTV that Floyd had seen in front of defendant's residence. Floyd also confirmed that "the instrumentation including, shifting lever, parking brake, steering wheel, and * * * safety stickers are placed in identical positions" on the UTV in the photographs taken by Clayburn and the images of the Kawasaki UTV that he had found on the internet. Floyd included the photographs of the UTV taken by Clayburn and the images of the Kawasaki UTV he found on the internet as exhibits with the affidavit. Floyd discovered that defendant had an extensive criminal history that included four arrests and convictions for unauthorized use of a vehicle and six arrests and convictions for theft. Based on that information, Floyd's affidavit stated that he had probable cause to believe defendant was involved in the theft of the UTV and the other items from the victim, and that evidence of those crimes would be located at defendant's residence. On September 30, after reviewing Floyd's affidavit, a magistrate issued a search warrant for defendant's residence.

On October 2, Floyd and other officers executed the search warrant and the search revealed a number of items that the victim had reported as stolen, including parts belonging to a Kawasaki Mule 610 UTV. After defendant was charged with unauthorized use of a vehicle and theft in the second degree, he moved under Article I, section 9, of the Oregon Constitution to suppress all the evidence that the police found in their search.[1] Defendant argued that there

---

[1] Article I, section 9, provides, in part, that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

was insufficient evidence to "identify the UTV that [defendant was] driving * * * on the 14th of September" as the same "UTV reported as stolen." Defendant also contended that nothing in the affidavit indicated that there was "a limited market or such a limited amount of registration of these vehicles in the community. So that it had to be [defendant who] * * * burglarized this particular item." The state responded that "this particular UTV, albeit stripped down from the fenders and other type of identifying features, as photographed by Deputy Clayburn, on top of the research done by Sergeant Floyd, gives an indicator that * * * [defendant] was in fact in possession of the property which was taken from the victim in this matter."

The trial court concluded that the state met its burden to show probable cause. In making its decision, the trial court noted that, "within a short time frame," defendant was "stopped in the night operating * * * a Kawasaki UTV that's stripped of all its identifying components with a story that it's a self-made product, which doesn't seem likely given the nature of * * * the deputy's observations on the night in question." The trial court also relied on the fact that "the instrumentation including, shifting lever, parking brake, steering wheel, and manufacturer's safety stickers [were] placed in identical positions" on the UTV in the photographs taken by Clayburn when he stopped defendant and the images of the UTV Floyd had found on the internet. Based on that information in the affidavit, the trial court concluded that the state met its burden to show probable cause and denied defendant's motion to suppress. Following a jury trial, defendant was convicted of unauthorized use of a vehicle and theft in the second degree.

On appeal, defendant reprises his argument under Article I, section 9, that the "affidavit was insufficient to establish that, more likely than not, evidence from the * * * burglaries would be discovered at defendant's residence without evidence linking defendant's UTV to [the victim's] stolen UTV."[2] The state responds that "the fact that

---

[2] Defendant does not separately argue that, even if a reasonable magistrate could have concluded that there was probable cause to search for the victim's UTV, the affidavit did not support a search of his home.

defendant possessed what appeared to be a stolen UTV close in time and close in proximity to [the victim's] reported theft supports a reasonable inference that the UTV was probably [the victim's]."

"The sufficiency of the search warrant affidavit presents a legal question * * * [and] [n]o appellate court deference to the trial court's findings or conclusions [i]s appropriate or warranted." *State v. Castilleja*, 345 Or 255, 265-66, 192 P3d 1283, *adh'd to on recons*, 345 Or 473 (2008). When reviewing a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a search warrant, this court asks whether "a neutral and detached magistrate could conclude (1) that there is reason to believe that the facts stated are true; and (2) that the facts and circumstances disclosed by the affidavit are sufficient to establish probable cause to justify the search requested." *Id.* at 264. In this case, defendant did not challenge the factual content of the affidavit at trial and he does not make that challenge on appeal.[3] Thus, our inquiry is limited to whether, "given the uncontroverted facts in the affidavit and reasonably derived inferences, the issuing magistrate reasonably 'could have concluded that the affidavit (excluding the excised parts) established probable cause to search * * *.'" *State v. Duarte/ Knull-Dunagan*, 237 Or App 13, 21, 238 P3d 411, *rev den*, 349 Or 370 (2010) (quoting *Castilleja*, 345 Or at 265).

Probable cause exists when facts set out in the affidavit could "lead a reasonable person to believe that seizable things will probably be found in the location searched." *Castilleja*, 345 Or at 264 (citations and internal quotation marks omitted). "[T]here is a vast difference between proof of probable cause and proof of guilt[.]" *State v. Tacker*, 241 Or 597, 600, 407 P2d 851 (1965).

In exercising our review function, we "view the predicate affidavit in a commonsense, nontechnical and

---

[3] At the suppression hearing, the state conceded that statements from an unnamed informant contained in the affidavit could not be used to establish probable cause, and the trial court did not consider the informant's statements when it made its probable cause determination. On appeal, the state acknowledges its previous concession. Accordingly, we do not consider the informant's statements in our analysis.

realistic fashion, with doubtful cases to be resolved by deferring to an issuing magistrate's determination of probable cause." *Duarte/Knull-Dunagan*, 237 Or App at 21 (ellipsis, internal quotation marks, and citations omitted). That deferential standard comports with the preference for warranted searches.[4] Additionally, "we are required to consider any reasonable inference that could have been drawn from the facts in the affidavit to support the magistrate's determination of probable cause." *State v. Marsing*, 244 Or App 556, 559, 260 P3d 739 (2011) (citing *State v. Goodman*, 328 Or 318, 326, 975 P2d 458 (1999)). "That is so regardless of whether the reviewing court—whether a trial court, this court, or the Supreme Court—might have drawn different inferences yielding a different determination." *Duarte/Knull-Dunagan*, 237 Or App at 21.

The affidavit provides various facts from which reasonable inferences can be drawn that the UTV in defendant's possession was probably the victim's: (1) On September 3, 2013, Floyd began investigating the theft of the victim's UTV in Coos Bay, a small city on the Oregon coast, and found images of the same make and model of UTV on the internet. Floyd noted that, unlike many other makes and models of UTVs, a Kawasaki Mule Model 610 has a front bench seat rather than bucket seats and, as a result, the parking brake is located on the left side of the driver's seat rather than between the seats; (2) 11 days later, at about 5:40 a.m. on September 14, defendant was stopped driving a UTV in Coos Bay that Clayburn could not identify the make and model of because the UTV had been stripped of several parts, and defendant explained to Clayburn that it did not have a serial number and was missing the plastic fenders,

---

[4] In *State v. Chamu-Hernandez*, we stated:

> "The preference for warrants is rooted in the constitutional principal of separation of powers. That preference recognizes that a search pursuant to a warrant involves both the executive branch, which conducts the search, and the judicial branch, which issues the warrant. By contrast, a warrantless search is the unilateral act of the executive branch unchecked by judicial oversight."

229 Or App 334, 342 n 5, 212 P3d 514, *rev den*, 347 Or 43 (2009). Thus, the preference serves to encourage the use of warrants by the police before they act. *See Tacker*, 241 Or at 601 ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.").

seat belts, seat back assembly, front clip, roll cage, and dump bed because defendant had built the UTV himself; (3) Clayburn thought that the UTV appeared to have been factory built; (4) Floyd knew from his training and experience "that thieves will often alter the appearance of items taken * * * in an attempt to avoid detection and discovery"; (5) because the UTV had been stripped of several parts, the only way Floyd could identify the make and model of the UTV defendant had been driving was because the UTV had a bench seat and because "the instrumentation including, shifting lever, parking brake, steering wheel, and manufacturer's safety stickers [we]re placed in identical positions" on the UTV that was reported stolen and the one seen in defendant's possession; and (6) defendant's criminal history included four arrests and convictions for the unauthorized use of a vehicle and six arrests and convictions for theft.

Here, it is reasonable to infer that the UTV defendant was driving in Coos Bay in the early morning hours of September 14 was probably the UTV the victim had reported as stolen 11 days earlier on September 3 from his home in Coos Bay. Because the UTV had been stripped of several parts, the only way Floyd could identify the UTV defendant had been driving as a Kawasaki Mule Model 610 was by the unique placement of certain components on a Kawasaki Mule Model 610 due to the location of its bench seat. Unlike many other makes and models of UTVs, "the instrumentation including, shifting lever, parking brake, steering wheel, and * * * safety stickers" on the UTV that was reported stolen on September 3 and the one seen in defendant's possession on September 14 were "placed in identical positions." *See State v. Gale/Rowden*, 105 Or App 489, 498, 805 P2d 158, *rev den*, 311 Or 427 (1991) (information in the affidavit must be "viewed as a whole," including the location of the criminal activity and the character of the crime or thing to be seized).

Moreover, the inference that defendant had probably been driving the victim's stolen UTV in the early morning hours of September 14 is further supported by the fact that the UTV defendant was driving had been stripped of several parts and defendant's explanation that it did not have those parts or an identification number because he had built the

UTV himself. Under the circumstances, Clayburn thought that defendant's explanation that defendant had built the UTV himself was unlikely and he also thought that the UTV appeared to be factory built. Additionally, in Floyd's experience as a law enforcement officer, he knew that "thieves will often alter the appearance of items taken * * * in an attempt to avoid detection and discovery." *See State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("[f]acts derived from training and experience may contribute [the] necessary factual nexus in a determination of probable cause" when that expertise is used "to provide a criminal law nexus" to "other, separately verified facts which—absent the officer's explanation—could be understood to be innocent").

Finally, in light of the fact that defendant's extensive criminal history included four arrests and convictions for the unauthorized use of a vehicle and six arrests and convictions for theft, the issuing magistrate could reasonably conclude from the affidavit as a whole, and the reasonable inferences drawn therefrom, that the UTV in defendant's possession probably was the victim's stolen UTV. *See State v. Tropeano*, 238 Or App 16, 19-20, 241 P3d 1184 (2010), *rev den*, 349 Or 654 (2011) (the defendant's prior conviction for possession of child pornography and status as a registered sex offender helped support probable cause to search hotel room for child pornography).

In sum, we conclude that the short 11-day timeframe between when the UTV was stolen in Coos Bay and when defendant was observed in possession of a similar UTV in Coos Bay, the identical placement of manufactured components on the stripped UTV and the UTV stolen from the victim, defendant's unlikely story that the UTV was a self-made product, Floyd's experience that thieves often alter the appearance of items they steal, and defendant's criminal history involving theft and the unauthorized use of vehicles, permitted a reasonable magistrate to infer that the UTV in defendant's possession was probably stolen from the victim. *See Tropeano*, 238 Or App at 20 ("[d]espite the existence of alternative, possible innocent explanations for defendant's conduct," probable cause existed to issue a warrant); *Duarte/Knull-Dunagan*, 237 Or App at 23 ("[D]iffering issuing magistrates could draw differing inferences, of

varying strength from those facts *** and the magistrate was not obligated to draw noninculpatory inferences—or, more precisely, was not precluded from drawing inculpatory inferences—from the stated facts."); *State v. Wheelon*, 137 Or App 63, 72, 903 P2d 399 (1995), *rev den*, 327 Or 123 (1998) ("The fact that the information in the affidavit may reasonably give rise to *other* inferences does not mean the affidavit is insufficient." (Emphasis in original.)).

In addition, the affidavit contained information that permitted the magistrate to infer that the UTV would probably be found at defendant's residence. Floyd saw the same UTV that defendant had been driving on September 14 parked at defendant's residence four days later on September 18. Thus, the magistrate reasonably could conclude that the property stolen from the victim would probably be found in the place described in the warrant. In sum, we conclude that, consistently with our standard of review, the magistrate did not err in determining that the affidavit established probable cause. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

**GARRETT, J.,** dissenting.

I respectfully dissent. In my view, the information in Sergeant Floyd's affidavit was insufficient to allow a reasonable person to conclude that it was "more likely than not" that the Kawasaki Mule utility vehicle (UTV) in front of defendant's residence was the same one that was stolen from the victim's home more than two weeks earlier. *State v. Huff*, 253 Or App 480, 486, 291 P3d 751 (2012) (to establish probable cause, the information in the affidavit "must be such that a reasonable person could conclude that it is *more likely than not* that the objects of the search will be found at the locations to be searched" (emphasis in original; citations and internal quotation marks omitted)).

Two facts bear emphasis. First, Floyd's affidavit asserted probable cause to believe not merely that defendant was in possession of a stolen Kawasaki Mule, but that defendant was in possession of *the victim's* Kawasaki Mule. Second, the police did not associate the "stolen" UTV with the

victim's UTV on the basis of any characteristics—scratches, dents, missing parts, or the like—that were unique to the victim's UTV. Rather, the police made that association on the basis that the victim's UTV was a Kawasaki Mule, that *that model* of UTV has features that differentiate it from other models, and that the UTV in defendant's possession had those same features.

The probability of a "match" in a circumstance such as this is affected by, among other things, how common the type of object is in the relevant area. To illustrate the point, suppose that, instead of a "Kawasaki Mule" in Coos Bay, this case involved a "Subaru Outback" in Portland. I think it is obvious that, in reviewing whether the affidavit established probable cause to suspect that defendant possessed the *victim's* vehicle, it would not be sufficient to know that defendant possessed a stolen Subaru Outback and that a Subaru Outback had been reported stolen from somewhere else in Portland two weeks earlier. Portland is big, and anyone who has been there knows that Subaru Outbacks are ubiquitous. Thus, even assuming that defendant possessed a stolen one, the probability of its being the same one reported stolen by a particular person two weeks earlier is not high (in the absence of other information that would enable one to draw that connection).

This case differs only in the object stolen and the locale of the theft. The principle is the same. If Kawasaki Mules are rare in Coos Bay, then the inference that the stolen Mule possessed by defendant was the victim's UTV might be reasonable. The larger the number, the lower the probability of a match. The problem is that nothing in Floyd's affidavit provides any information about how common Kawasaki Mules are in that community. Accordingly, the only way that an issuing magistrate could draw a reasonable inference about the likelihood of the UTV in defendant's possession being the same one reported stolen by the victim is if the magistrate possessed additional facts, outside the four corners of the affidavit, about the frequency with which Kawasaki Mules are found in the Coos Bay area. Probable cause cannot be established on the basis of such unarticulated facts. *See State v. Pelster/Boyer*, 172 Or App 596, 601, 21 P3d 106, *rev den*, 332 Or 632 (2001) ("In reviewing the

sufficiency of an affidavit, we rely on the facts as stated together with any reasonable inferences that can be drawn from them."); *State v. Melendy*, 49 Or App 441, 444, 619 P2d 952 (1980) ("Probable cause must be determinable from the facts recited in the four corners of the affidavit." (Internal quotation marks omitted.)).

In sum, on the basis of Floyd's affidavit, an issuing magistrate could not conclude that the Kawasaki Mule possessed by defendant, even if stolen, was "more likely than not" the victim's UTV. Therefore, the Floyd affidavit failed to establish probable cause to believe that the victim's UTV would be found at defendant's home, and the trial court erred in denying the motion to suppress. Because the majority concludes otherwise, I respectfully dissent.