No. 419 May 13, 2026 623

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

XISHI XIE,
*Defendant-Appellant.*

Marion County Circuit Court
22CR10101; A184501

J. Channing Bennett, Judge.

Submitted April 15, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil Francis Byl, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Philip Thoennes, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded for further proceedings; otherwise affirmed.

**JACQUOT, J.**

In this criminal appeal based on a conditional guilty plea under ORS 135.335(3),[1] defendant challenges the denial of his motion to suppress and asks us to reverse and remand to give defendant the option of withdrawing his plea. The state charged defendant with felony unlawful manufacture of a marijuana item, ORS 479C.349,[2] a class C felony. In a single assignment of error, defendant argues that the affidavit failed to establish probable cause for the offense of unlawfully manufacturing a marijuana item and that the search commands in the warrant were insufficiently specific and overbroad. The parties agree that if we "conclude that some aspect of the warrant is insufficiently specific or overbroad," the correct remedy would be a remand to the trial court for defendant to decide whether to withdraw his guilty plea, followed by a hearing pursuant to *State v. Turay*, 371 Or 128, 532 P3d 57 (2023). We reverse as to overbroad search commands for searches of digital devices and remand for a *Turay* hearing and otherwise affirm.

On appeal, defendant first challenges whether the affidavit established probable cause for the issuance of the warrant. Second, defendant argues that the search commands in the warrant were insufficiently specific and overbroad, in violation of Article I, section 9, of the Oregon Constitution.

The state responds that neither of defendant's arguments requires reversal because the affidavit provided probable cause to believe that evidence of the unlawful

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[2] ORS 475C.349 was previously numbered ORS 475B.349. For clarity, we use the current citation for this statute. ORS 475C.349 provides, in relevant part:

"(3) Unlawful manufacture of a marijuana item is:

"* * * * *

"(b) A Class C felony, if:

"(A) A person unlawfully manufactures marijuana and the total number of plants in the genus Cannabis within the plant family Cannabaceae exceeds 12 plants * * *."

manufacture of marijuana would probably be found in the subject residence and the search commands were specific enough to apprise the executing officers of which items were subject to search and seizure.

We review a challenge to the sufficiency of a search warrant affidavit for legal error. *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008). In considering whether an affidavit supports probable cause, we consider "all inferences that fairly may be drawn from [the facts in the affidavit]." *Id.* at 270 (internal quotation marks omitted). If the trial court does not make express findings on a pertinent issue, we "presume that the facts were decided in a manner consistent with the court's ultimate conclusion." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Additionally, we review challenges to the particularity of search warrant commands for legal error. *State v. Paye*, 310 Or App 408, 413, 486 P3d 808 (2021).

Article I, section 9, of the Oregon Constitution provides in pertinent part that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Under Article I, section 9, probable cause to issue a search warrant means "that the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach*, 298 Or 375, 380-81, 692 P2d 602 (1984). "'Probably' means more likely than not." *State v. Chambless*, 111 Or App 76, 80, 824 P2d 1183, *rev den*, 313 Or 210 (1992) (internal quotation marks omitted). To uphold a warrant, "the reviewing court need only conclude that the issuing magistrate reasonably could conclude that the facts alleged, together with the reasonable inferences that fairly may be drawn from those facts," are sufficient to establish probable cause. *Castilleja*, 345 Or at 270-71. We construe "the supporting affidavit in a common-sense and realistic fashion" and "[d]oubtful cases should be resolved in favor of allowing the warrant." *State v. Tropeano*, 238 Or App 16, 19, 241 P3d 1184 (2010), *rev den*, 349 Or 654 (2011) (internal quotation marks omitted).

Construing this affidavit in a "commonsense and realistic" manner, *id.*, the affidavit here contained sufficient facts to permit "a reasonable person to believe that seizable things [would] probably be found in" the Tynel Court residence. *Castilleja*, 345 Or at 264. The affidavit established that defendant modified the property,[3] used an "extremely high" amount of water "for a typical residential home,"[4] defendant was listed as a "registered grower" at the property address, the address was listed as a "grow site" through the Oregon Medical Marijuana Program (OMMP), the address was not listed as a grow site for recreational marijuana through the Oregon Liquor and Cannabis Commission (OLCC), and power consumption at the Tynel Court property was much higher than the national average for residential consumption.[5] Additionally, the police and public databases, including county tax records and city utility records, connected the Tynel Court property address to four other properties in Salem and Keizer. Those sources also connected several people to those properties and to each other.[6]

Defendant argues that "power usage data *** is an important factor" but "is not sufficient by itself" to establish probable cause to believe that a property is used unlawfully

---

[3] Defendant installed black hoses running into the house through a pet door and foam insulation often used in marijuana growing operations to insulate the sound of fans and generators. Neighbors also noticed that no one stayed in the house overnight, the owners covered up the windows, and the neighbors thought there was "some type of drug activity" occurring.

[4] City utility records indicated that the Tynel Court property used 42 units of water in the billing cycle that ended on October 7, 2021, which is equivalent to 31,416 gallons of water and "extremely high for a typical residential home."

[5] The affidavit also stated that an officer obtained information from a Special Agent with the Department of Homeland Security regarding average power consumption per marijuana plant at six locations where plants had been seized. The highest average power per plant was 21.16 kWh and the lowest was 10.12 kWh. Using those numbers and the updated power consumption records, the officer estimated that power usage at the Tynel Court property could support the production of 755 to 1,580 marijuana plants.

[6] Some of the people associated with those properties had ties to other properties in Georgia and Colorado, and law enforcement had reason to believe that some of those people were involved in large-scale illegal marijuana production. Suspicions about a property on Northshire Court eventually led to suspicions about the other properties, including the one on Tynel Court. Based on those suspicions, Officer Young obtained water and power records for all four properties, which reinforced his suspicions that the properties were being used to grow marijuana.

to produce marijuana. *State v. Johnson*, 186 Or App 186, 193, 62 P3d 861 (2003). But here, the affidavit did not rely on power usage alone to support probable cause. Rather, the police knew about an intricate network of people and properties, some of whom were implicated in ongoing law enforcement investigations, knew that the property was registered as an OMMP grow site, and knew that the property was using much more electricity than needed to support medical marijuana production.[7]

Second, defendant argues that the search commands in the warrant were overbroad and insufficiently specific, in violation of Article I, section 9, of the Oregon Constitution. Specifically, the search warrant authorized a search for:

> "Evidence related to the crimes of Unlawful Manufacture of a Marijuana Item (ORS 475B.349), Unlawful Possession of a Marijuana Item (ORS 475B.337), Unlawful Production of Marijuana (Oregon HB 3000 (2021), Sect. 41, and conspiracy to commit such offenses;

> "To search for, seize and analyze any item of communication, which may be instrumentalities, fruits and evidence of crimes related to the crimes of Unlawful Manufacture of Marijuana Item (ORS 475B.349), Unlawful Possession of Marijuana Item (ORS 475B.337), Unlawful Production of Marijuana (Oregon HB 3000 (2021), Sect. 41), and conspiracy to commit such offenses can be located."

The warrant also authorized search and seizure of "valuable assets believed to be the proceeds or instrumentalities of criminal activity" and "proceeds or instrumentalities of the aforementioned crimes," as well as a search "to determine the ownership or control of other items such as vehicles, cellular phones and backpacks or bags."

---

[7] Though defendant argues that "the state did not rely" on the water consumption information in arguing for probable cause, that does not mean that the water consumption information is excluded from the probable cause analysis on appeal.

An assessment of probable cause must consider all uncontroverted facts in the affidavit and all reasonably derived inferences from those facts. *State v. Newsted*, 279 Or App 701, 705, 381 P3d 1025, *rev den*, 360 Or 697 (2016). Thus, the fact that the Tynel Court property used an "extremely high" amount of water may properly be considered by the issuing magistrate and in our determination.

In arguing the warrant was insufficiently specific, defendant points to language authorizing a search for "[e]vidence related to" and "any item of communication, * * * related to" various marijuana offenses and argues that the warrant provisions were "insufficient to apprise the executing officer of which items were or were not subject to the warrant." *State v. Savath*, 298 Or App 495, 501-02, 447 P3d 1, *rev den*, 365 Or 722 (2019). We have recognized that "with regard to searches for data on cell phones or similar electronic devices, the particularity requirement takes on special significance." *Id.* at 499. This is because a modern cellphone or computer "is a repository with a historically unprecedented capacity to collect and store a diverse and vast array of personal information." *State v. Mansor*, 363 Or 185, 208, 421 P3d 323 (2018). As such, a warrant for an electronic search "'must identify, as specifically as reasonably possible in the circumstances, the *information* to be searched for.'" *Savath*, 298 Or App at 500 (quoting *Mansor*, 363 Or at 218) (emphasis in *Savath*). A warrant to search for and seize a computer must "describe the information the state seeks (the 'what') with as much specificity as reasonably possible under the circumstances, including, if available and relevant, a temporal description of when the information was created, accessed, or otherwise used." *Mansor*, 363 Or at 222.

Because this warrant authorized an unlimited search of any electronic data storage devices and did not make any temporal or subject matter limitation to the scope of the search, it is insufficiently specific and requires remand for a hearing to make the determinations required by the *Turay* line of cases.[8] In that case, the Supreme Court adopted

---

[8] Defendant additionally argues that the search category that authorized police to search for, seize, and analyze "external storage mediums such as portable hard drives, memory cards (SD or similar) and USB drives; cryptocurrencies, programs, keys, mini keys, passwords, QR codes and seed phrases, as well as proceeds or instrumentalities of the aforementioned crimes" is unconstitutionally overbroad and failed to satisfy *Mansor*. The state responds that *Mansor* does not apply to storage devices, but rather just "some digital devices," while "leav[ing] to future cases the determination of the specific boundaries" of the "category of items that must be seized and searched pursuant to the rules discussed in" that opinion. *Mansor*, 363 Or at 201 n 10.

However, in *State v. Curry*, 336 Or App 72, 86-87, 560 P3d 694 (2024), we held that search categories authorizing police to search for, seize, and examine

the burden-shifting framework from *State v. DeJong*, 368 Or 640, 497 P3d 710 (2021), under which the defendant must show "a minimal factual nexus between a constitutional violation and the challenged evidence \*\*\*." *Turay*, 371 Or at 164 (internal citation and quotation marks omitted). If the defendant meets that burden, the state bears the burden of showing "that the challenged evidence was untainted by the constitutional violation." *Id.* (internal citation and quotation marks omitted). Although *Turay* involved a warrant to search a digital device that included both lawful and unlawful search commands, we have since held that the *Turay/DeJong* burden-shifting framework "appl[ies] equally to warrants to search physical places for physical items and to warrants for digital data." *Curry*, 336 Or App at 90.

Having reviewed the record and the relevant case law, we agree with the state that the affidavit established probable cause to search the Tynel Court *property* in this case was not insufficiently specific or overbroad. However, we agree with defendant that the search command authorizing an unlimited search of digital storage devices was unconstitutionally overbroad, consistent with *Curry*, 336 Or App at 86-87.

Reversed and remanded for further proceedings; otherwise affirmed.

---

any cellphones, computers, and "other digital evidence storage devices and their contents" were unconstitutionally overbroad. In that case, we could not distinguish between "computers, tablets, and cellphones" and "digital-storage devices" because "computers, tablets, and cellphones" are themselves "digital-storage devices," bearing the same unique characteristics as USB drives and computer hard drives. Here, no storage devices that were not phones were actually seized. Nonetheless, unlimited searches of electronic storage devices are unconstitutionally overbroad.